JUDGE FAILLA

PREETHI KRISHNAMURTHY
krishnamurthyp@sec.gov
SECURITIES AND EXCHANGE COMMISSION
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-0116

LYNN M. DEAN*
deanl@sec.gov
AMY J. LONGO*
longoa@sec.gov
PATRICIA PEI*
peip@sec.gov
SECURITIES AND EXCHANGE COMMISSION
444 South Flower Street, Suite 900
Los Angeles, CA 90071
(323) 965-3998

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

17 CV 2659

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

vs.

ONE OR MORE UNKNOWN TRADERS
IN THE SECURITIES OF GENERAL
COMMUNICATION, INC.,

        Defendants.

**COMPLAINT**

17 Civ. _____ (___)
ECF CASE



RECEIVED
APR 13 2017
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Securities and Exchange Commission ("SEC"), for its Complaint against defendants Certain Unknown Traders in the Securities of General Communication, Inc. ("Defendants"), alleges as follows:

---

* Not admitted in SDNY, *pro hac vice* application to be filed.

## SUMMARY

1. This is an insider trading case involving highly suspicious trading in call option contracts ("options") of General Communication, Inc. ("GCI") by the Defendants just prior to the April 4, 2017 announcement that GCI had entered into an agreement to be acquired by Liberty Interactive Corporation ("Liberty") (the "Announcement"). The $32.50 per share price offered by Liberty represented a 58.1% premium to GCI's closing share price on April 3, 2017. As a result of the Announcement, GCI's stock price increased from a close of $20.56 on April 3, 2017 to a close of $33.39 on April 4, 2017, an increase of nearly 62.4%. The Announcement also caused a dramatic rise in GCI's trading volume which increased to 7.8 million shares on April 4, 2017, a 4,923% increase over the previous day's volume. These facts placed the Defendants in a position to gain substantial profits.

2. The Defendants in this action are either foreign traders or traders trading through foreign accounts whose purchases of GCI calls generated unrealized profits of over $1 million. On information and belief, the Defendants are either located in or trading through accounts located in Lebanon and the United Kingdom.

3. On information and belief, the Defendants purchased GCI calls while in the possession of material, nonpublic information concerning the proposed acquisition of GCI.

4. Defendants' trading in GCI calls is highly suspicious. Specifically, from March 20 to March 31, 2017, Defendants purchased a total of 1,293 out-of-the-money call options (specifically, GNCMA 21APR17 22.50 C, GNCMA 21APR17 25.00 C, and GNCMA 19MAY17 22.50 C) for a total of nearly $48,109. Yet in the six-month period immediately preceding the Announcement, between October 1, 2016 and March 19, 2017, neither of the accounts through which Defendants traded placed any trades in GCI.

5. Defendants' purchases occurred while GCI and Liberty were in talks regarding Liberty acquiring CGI. The purchases began ten days after GCI's special committee to consider and negotiate a potential transaction with Liberty retained Lazard Frères & Co., and continued for the two weeks immediately prior to the announcement of the acquisition.

6. Defendants' trading between March 20 and 31, 2017 also represented a significant amount of the total volume of GCI call options traded. Indeed, Defendants' purchases of two of the three call options they bought – GNCMA 21APR17 25.00 C and GNCMA 19MAY17 22.50 C – represented virtually 100% of the market for those options. In fact, there was only one GNCMA 19MAY17 22.50 C option contract that was not purchased by Defendants. As for the other call option they bought – the GNCMA 21APR17 22.50 C option – the Defendants' trading in that option represented approximately 35% of the total numbers sold for that option contract and represented 57.2% of all the open positions in that contract on the day before the acquisition was announced. Moreover, unlike other traders in this option contract, Defendants did not hedge their call option purchases with sales, even though Defendants purchased the majority of these options when GCI's common stock was trading at a six month high of over $20 per share. This made their unhedged bet that the shares would rise even riskier than at any time in the prior six months.

7. The April 4, 2017 Announcement caused the price of GCI stock to surge over 62.4%, making the Defendants' initial investment of $48,109 worth over $1 million.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The SEC brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The SEC seeks permanent injunctions against Defendants, enjoining them from engaging in the

transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. The SEC seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

10. Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange. During the time of the conduct at issue, shares of GCI stock were traded on the NASDAQ.

## DEFENDANTS

11. **Certain Unknown Customer(s) of Cedrus Invest Bank SAL** – The SEC has not yet been able to identify the customer(s) who directed and profited from the relevant trading in call options of GCI.

12. **Certain Unknown Customer(s) of Nomura International plc** – The SEC has not yet been able to identify the customer(s) who directed and profited from the relevant trading in call options of GCI.

## OTHER RELEVANT ENTITIES

13. **Interactive Brokers LLC** ("Interactive Brokers") is a Greenwich, Connecticut-based brokerage firm that is registered with the Commission.

14.     **Cedrus Invest Bank SAL** ("Cedrus") is a bank located in Beirut, Lebanon. Cedrus's website describes it as a "one-stop banking boutique offering high-end financial services" to its customers. At Interactive, Cedrus maintains a separate trading limits account, which is structured as a master account with subaccounts. The Cedrus trading account purchased 540 out-of-the-money call options between March 20 and March 29, 2017. The account subsequently sold these options for a potential profit of $526,925.

15.     **Nomura Securities International, Inc.** ("Nomura US") is a New York-based brokerage firm that is registered with the Commission. Nomura US operates as a subsidiary of Nomura Holding America, Inc.

16.     **Nomura International plc** ("Nomura UK") is a London-based brokerage firm. Nomura UK operates as a subsidiary of Nomura Europe Holdings plc. Nomura UK maintains an omnibus account at Nomura US, through which it trades securities on U.S. exchanges on behalf of its customers. The Nomura UK trading account purchased 753 out-of-the-money call options between March 22 and March 31, 2017. The Nomura UK account subsequently transferred 40 of the options to JP Morgan on April 4, 2017, and sold the remaining 713 options for a potential profit of $627,756.

17.     **General Communication, Inc.** ("GCI") provides residential and business telecommunications services to residents of Alaska. It is headquartered in Anchorage, Alaska. GCI's common stock trades on the NASDAQ under the ticker symbol GNCMA.

18.     **Liberty Interactive Corporation** ("Liberty") owns interests in subsidiaries and other companies that are primarily engaged in the video and digital commerce industries. Its common stock is listed on the NASDAQ.

## FACTS

A. **The Agreement to Acquire GCI**

19. On December 2, 2016, Liberty first approached GCI to discuss the possibility of acquiring GCI. On December 8, 2016, GCI and Liberty signed a non-disclosure agreement concerning the proposal. On January 21, 2017, Liberty delivered a written proposal for a business combination to GCI's CEO.

20. The companies engaged in confidential discussions about this proposal, and under the terms of the non-disclosure agreement, were bound to keep these negotiations confidential and non-public.

21. On February 9, 2017, Liberty's proposal for a business combination was formally presented to GCI's board of directors. From February 15 to April 3, 2017, select GCI employees were informed about Liberty's proposal on a need-to-know basis.

22. On March 3, 2017, GCI established a special committee to consider and negotiate a transaction with Liberty. On March 11, 2017, the GCI special committee retained Lazard Frères &Co. as financial advisors. From March 23 through March 31, 2017, the parties exchanged proposals and continued to negotiate the transaction.

23. On March 31, 2017, Liberty and GCI informed Moody's and S&P about certain aspects of the proposed transaction for the purpose of obtaining ratings for certain credit-related matters. On April 3, 2017, the special committee and the GCI board held meetings at which Lazard made a presentation regarding the fairness of the proposal.

24. On April 4, 2017, the Liberty/GCI transaction documents were signed, and the parties issued a press release before the markets opened announcing the transaction. The deal

price of $32.50 per share represented a 58.1% premium over GCI's closing price of $20.56 on April 3, 2017.

25.     In reaction to the April 4, 2017 Announcement, GCI's stock closed at $33.39 – an increase of $12.83 per share, or approximately 62.4%, over the previous trading day's closing price of $20.56. In the six months prior to the Announcement, GCI's stock had never traded higher than $21.78, and its average price over that six-month period was $18.31.

**B.     Suspicious and Profitable Trading by Unknown Traders of GCI Securities**

26.     Between March 22 and 31, 2016, one or more unknown traders, using the Cedrus and Nomura UK accounts, purchased 1,293 out-of-the-money call options, GNCMA 21APR17 22.50 C, GNCMA 21APR17 25.00 C, and GNCMA 19MAY17 22.50 C, for a total of nearly $48,109.

27.     Equity call options, like the ones traded by Defendants, give the buyer the right, but not the obligation, to purchase a company's stock at a set price (the "strike price") for a certain period of time (through "expiration"). In general, one buys a call option, or call, when one expects the stock price to rise, or sells a call when one expects the stock price to fall. If at the time of purchase the call strike price is above the price at which the stock is then trading, the call is "out of the money" because it would be unprofitable to exercise the call and pay more for the stock than if it were purchased on a stock market.

28.     Defendants purchased three option contracts for GCI stock between March 20 and March 31, 2017, shortly before the Announcement.

29.     Specifically, Defendants bought GNCMA 21APR17 22.50 C, GNCMA 21APR17 25.00 C and GNCMA 19MAY17 22.50 C. The GNCMA 21APR17 22.50 C option contracts gave the Defendants the right to buy GCI stock at a strike price of $22.50 per share and expired

on April 21, 2017; the GNCMA 21APR17 25.00 C option gave them the right to buy GCI stock at $25.00 per share and also expired on April 21, 2017; and the GNCMA 19MAY17 22.50 C option contract gave them the right to buy GCI stock at $22.50 per share and expired on May 19, 2017.

30.  The following table shows the dates, amount and cost of each of the call option contracts the Defendants bought shortly before the April 4, 2017 Announcement of the GCI acquisition:

| **Option Series** | **Dates** | **Number** | **Cost** |
|---|---|---|---|
| Nomura UK Account | | | |
| GNCMA 21APR17 22.50 C | 3/22/2017<br>3/30/2017<br>3/31/2017 | 50<br>148<br>15 | $3000<br>$5,235<br>$525 |
| GNCMA 21APR17 25.00 C | 3/22/2017 | 500 | $9,874 |
| GNCMA 19MAY17 22.50 C | 3/31/2017 | 40 | $2,800 |
| Cedrus Account | | | |
| GNCMA 21APR17 22.50 C | 3/20/2017<br>3/29/2017 | 510<br>20 | $25,475<br>$1,000 |
| GNCMA 21APR17 25.00 C | 3/23/2017 | 10 | $200 |

31.  Defendants' purchase of CGI call options with strike prices of $22.50 and $25.00 was unusual given the historical share price for the common stock and the options data for those calls.

32.  All three of the option contracts that the Defendants bought in the March 20 to March 31, 2017 time period were out-of-the-money options. This is because their strike prices were $22.50 and $25.00, but the Defendants bought them when the price of GCI stock was

trading at below $22.00. Therefore, the price of GCI stock had to go up in order for the Defendants to make money on these call options by exercising them.

33. The Defendants purchased all of the GNCMA 21APR17 25.00 C options.

34. When they purchased GNCMA 19MAY17 25.00 C options on March 31, 2017, the Defendants purchased 510 out of the total 511 of that option series.

35. Defendants bought 35% of the available GNCMA 21APR17 22.50 C options series.

36. Other brokers that purchased GNCMA 21APR17 22.50 C for their customers also sold GCI options concurrent with those purchases. Unlike the rest of the market, the Defendants did not hedge their purchases of GNCMA 21APR17 22.50 C options with any sales.

37. The Defendants did not hedge their acquisition of these call options even though they purchased the majority of these options when GCI's common stock was trading at a six-month high of over $20 per share.

38. As a result of the April 4, 2017 Announcement, the price of CGI's common stock shot up from a close of $20.56 on April 3, 2017 to a close of $33.39 on April 4, an increase of over 62.4%. In just one day, the April 4, 2017 Announcement allowed Defendants' initial investment of $48,109 to appreciate to over $1 million.

39. Between October 1, 2016 and March 19, 2017, the Cedrus account placed no trades in GCI stock or options.

40. Between October 1, 2016 and March 19, 2017, the Nomura UK account placed no trades in GCI stock or options.

41. The timing, size, and profitability of the Defendants' trades, as well as the lack of prior history of significant trading in GCI, make these trades highly suspicious. In particular,

despite not having traded in GCI securities during at least the prior six months, Defendants' Cedrus and Nomura accounts invested $48,109 in risky option positions in the two weeks prior to the April 4, 2017 Announcement. Defendants' positions in the GNCMA 21APR17 25.00 C and GNCMA 19MAY17 22.50 C represented virtually 100% of the market for those options. As a result of these well-timed trades, Defendants realized profits of over $1 million in a single day.

42. On information and belief, the Defendants were in possession of material, nonpublic information about the proposed acquisition of GCI at the time they made the call option purchases alleged in this Complaint. Moreover, on information and belief, Defendants used confidential information about the proposed acquisition in breach of a fiduciary duty; were tipped that confidential information by an individual or individuals in breach of a fiduciary duty of trust and confidence; were provided with information that was misappropriated from such an individual in violation of a fiduciary duty to that insider; or misappropriated the confidential information in violation of a fiduciary duty.

## CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

**(Against All Defendants)**

43. The SEC realleges and incorporates by reference paragraphs 1 through 42, as though fully set forth herein.

44. Upon information and belief, at the time the Defendants purchased GCI call options, as alleged above, they possessed material, nonpublic information about the contemplated acquisition of GCI. The Defendants used confidential information about the proposed acquisition in breach of a fiduciary duty; were tipped that confidential information by an individual or individuals in breach of a fiduciary duty of trust and confidence; were provided

with information that was misappropriated from such an individual in violation of a fiduciary duty to that insider; or misappropriated the confidential information in violation of a fiduciary duty. Also, the Defendants (a) knew, recklessly disregarded, or should have known that their trading was in breach of a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, owed to the shareholders of GCI, or to the source from whom they received the material, nonpublic information; and/or (b) knew, recklessly disregarded, or should have known, that the material, nonpublic information about the contemplated acquisition that had been conveyed to them was disclosed or misappropriated in breach of a fiduciary duty, or similar relationship of trust and confidence.

45.    Upon information and belief, any and all material, nonpublic information that the Defendants received concerning the contemplated acquisition of GCI, as set forth above, was disclosed to them by a person or persons who tipped such information with the expectation of receiving a benefit.

46.    By virtue of the foregoing, the Defendants, singly or in concert with others, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; or (b) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

47.    By virtue of the foregoing, the Defendants, directly or indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF SOUGHT

**WHEREFORE**, the SEC respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### II.

Ordering the Defendants to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint.

### III.

Ordering the Defendants to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

## IV.

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 12, 2017

PREETHI KRISHNAMURTHY
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
Tel: (212) 336-0116
krishnamurthyp@sec.gov

Lynn M. Dean[*]
deanl@sec.gov
Amy J. Longo[*]
longoa@sec.gov
Patricia Pei[*]
peip@sec.gov
Securities and Exchange Commission
Los Angeles Regional Office
444 South Flower Street, Suite 900
Los Angeles, CA 90071
Tel: (323) 965-3998

* Not admitted in SDNY, *pro hac vice* application to be filed.