LYNN M. DEAN
deanl@sec.gov
AMY J. LONGO
longoa@sec.gov
PATRICIA PEI
peip@sec.gov
SECURITIES AND EXCHANGE COMMISSION
444 South Flower Street, Suite 900
Los Angeles, CA 90071
(323) 965-3998

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>          vs.<br><br>OMAR EL-ACHKAR, HALLOUN MALEK KHARRAT, AL DAHER AHMAD YAACOUB, AND ONE OR MORE UNKNOWN TRADERS IN THE SECURITIES OF GENERAL COMMUNICATION, INC.,<br><br>                    Defendants. | **FIRST AMENDED COMPLAINT**<br><br>17 Civ. 2569 (KPF)<br>ECF CASE |

Plaintiff Securities and Exchange Commission ("SEC"), for its Complaint against defendants Omar El-Achkar, Halloun Malek Kharrat, Al Daher Ahmad Yaacoub, and One or More Unknown Traders in the Securities of General Communication, Inc. ("Defendants"), alleges as follows:

**SUMMARY**

1. This is an insider trading case involving highly suspicious trading in call option contracts ("options") of General Communication, Inc. ("GCI") by the Defendants just prior to

the April 4, 2017 announcement that GCI had entered into an agreement to be acquired by Liberty Interactive Corporation ("Liberty") (the "Announcement"). The $32.50 per share price offered by Liberty represented a 58.1% premium to GCI's closing share price on April 3, 2017. As a result of the Announcement, GCI's stock price increased from a close of $20.56 on April 3, 2017 to a close of $33.39 on April 4, 2017, an increase of nearly 62.4%. The Announcement also caused a dramatic rise in GCI's trading volume which increased to 7.8 million shares on April 4, 2017, a 4,923% increase over the previous day's volume. These facts placed the Defendants in a position to gain substantial profits.

2.  The Defendants in this action are foreign traders and/or traders trading through foreign accounts whose purchases of GCI calls generated unrealized profits of over $1 million. On information and belief, the Defendants are either located in or trading through accounts located in Lebanon and the United Kingdom.

3.  On information and belief, the Defendants purchased GCI calls while in the possession of material, nonpublic information concerning the proposed acquisition of GCI.

4.  Defendants' trading in GCI calls is highly suspicious. Specifically, from March 20 to March 31, 2017, Defendants purchased a total of 1,293 out-of-the-money call options (specifically, GNCMA 21APR17 22.50 C, GNCMA 21APR17 25.00 C, and GNCMA 19MAY17 22.50 C) for a total of $50,696. Yet in the six-month period immediately preceding the Announcement, between October 1, 2016 and March 19, 2017, none of the accounts through which Defendants traded placed any trades in GCI.

5.  Defendants' purchases occurred while GCI and Liberty were in talks regarding Liberty acquiring CGI. The purchases began ten days after GCI's special committee met to consider and negotiate a potential transaction with Liberty and retained an outside financial

services firm, and continued for the two weeks immediately prior to the announcement of the acquisition.

6. Defendants' trading between March 20 and 31, 2017 also represented a significant amount of the total volume of GCI call options traded. Indeed, Defendants' purchases of two of the three call options they bought – GNCMA 21APR17 25.00 C and GNCMA 19MAY17 22.50 C – represented virtually 100% of the market for those options. In fact, there was only one GNCMA 19MAY17 22.50 C option contract that was not purchased by Defendants. As for the other call option they bought – the GNCMA 21APR17 22.50 C option – the Defendants' trading in that option represented approximately 35% of the total numbers sold for that option contract and represented 57.2% of all the open positions in that contract on the day before the acquisition was announced. Moreover, unlike other traders in this option contract, Defendants did not hedge their call option purchases, even though Defendants purchased the majority of these options when GCI's common stock was trading at a six month high of over $20 per share. This made their unhedged bet that the shares would rise even riskier than at any time in the prior six months.

7. The April 4, 2017 Announcement caused the price of GCI stock to surge over 62.4%, making the Defendants' initial investment of $50,696 worth over $1 million.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The SEC brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The SEC seeks permanent injunctions against Defendants, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together

with prejudgment interest, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].  The SEC seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

9.	This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

10.	Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange.  During the time of the conduct at issue, shares of GCI stock were traded on the NASDAQ.

## DEFENDANTS

11.	**Omar El-Achkar** resides in Beirut, Lebanon.  From 2007 until December 2016, El-Achkar was employed as the head of the trading desk at Aksys Capital SAL, a brokerage firm in Beirut.  In that capacity, he appears to have traded securities and provided investment advice to clients.  He purchased 1010 call options contracts for GCI in the two weeks preceding the Announcement.  He had no previous history of trading in GCI securities.

12.	**Halloun Malek Kharrat** resides in Beirut, Lebanon.  His occupation is unknown.  On March 31, 2017, he purchased 10 call options contracts for GCI.  He had no previous history of trading in GCI securities.

13.     **Al Daher Ahmad Yaacoub** resides in Beirut, Lebanon. His occupation is unknown. On March 24, 2017, he purchased 20 call options contracts for GCI. He had no previous history of trading in GCI securities.

14.     **Certain Unknown Customer(s) of Nomura International plc.** The SEC has not yet been able to identify the customer(s) who directed and profited from trading 273 call options of GCI through Nomura International, plc, a brokerage firm in London.

## OTHER RELEVANT ENTITIES

15.     **Interactive Brokers, LLC** ("Interactive") is a Greenwich, Connecticut-based brokerage firm that is registered with the SEC.

16.     **Cedrus Invest Bank, SAL** ("Cedrus") is a bank located in Beirut, Lebanon. Cedrus describes itself on its website as a "one-stop banking boutique offering high-end financial services" to its customers. Cedrus maintains an omnibus trading account at Interactive.

17.     **Nomura Securities International, Inc.** ("Nomura U.S.") is a New York based brokerage firm that is registered with the SEC. Nomura U.S. operates as a subsidiary of Nomura Holding America, Inc.

18.     **Nomura International, plc** ("Nomura U.K.") is a London based brokerage firm. Nomura UK operates as a subsidiary of Nomura Europe Holdings plc. Nomura UK maintains an omnibus account at Nomura U.S., through which it trades securities on U.S. exchanges on behalf of its customers.

19.     **Aksys Capital, SAL** ("Aksys") is a brokerage firm based in Beirut, Lebanon. Aksys maintains at least two bank accounts at two different banks in Beirut. The Aksys account at Cedrus traded through Interactive. The Aksys account at FFA Invest Bank traded through Nomura U.K.

5

**FACTS**

A. **The Agreement to Acquire GCI**

20. On December 2, 2016, Liberty first approached GCI to discuss the possibility of acquiring GCI. On December 8, 2016, GCI and Liberty signed a non-disclosure agreement concerning the proposal. On January 21, 2017, Liberty delivered a written proposal for a business combination to GCI's CEO.

21. The companies engaged in confidential discussions about this proposal, and under the terms of the non-disclosure agreement, were bound to keep these negotiations confidential and non-public.

22. On February 9, 2017, Liberty's proposal for a business combination was formally presented to GCI's board of directors. From February 15 to April 3, 2017, select GCI employees were informed about Liberty's proposal on a need-to-know basis.

23. On March 3, 2017, GCI established a special committee to consider and negotiate a transaction with Liberty. On March 11, 2017, the GCI special committee retained an outside financial services firm as financial advisors. From March 23 through March 31, 2017, the parties exchanged proposals and continued to negotiate the transaction.

24. On March 31, 2017, Liberty and GCI informed Moody's and S&P about certain aspects of the proposed transaction for the purpose of obtaining ratings for certain credit-related matters. On April 3, 2017, the special committee and the GCI board held meetings at which outside financial advisory counsel made a presentation regarding the fairness of the proposal.

25. On April 4, 2017, the Liberty/GCI transaction documents were signed, and the parties issued a press release before the markets opened announcing the transaction. The deal

price of $32.50 per share represented a 58.1% premium over GCI's closing price of $20.56 on April 3, 2017.

26. In reaction to the April 4, 2017 Announcement, GCI's stock closed at $33.39 – an increase of $12.83 per share, or approximately 62.4%, over the previous trading day's closing price of $20.56. In the six months prior to the Announcement, GCI's stock had never traded higher than $21.78, and its average price over that six-month period was $18.31.

### B. Suspicious and Profitable Trading by Traders of GCI Securities

27. On March 20, 2017, using his father's securities account at Aksys, Omar El-Achkar purchased 510 out-of-the money call options, GNCMA 21APR17 22.50 C. On March 22, 2017, Omar El Achkar purchased an additional 500 out-of-the-money GCI call options GNCMA 21APR17 25.00 C. The total cost of the options was $37,870, and he sold all of them on April 4, 2017 for a profit of $768,905.

28. On March 1, 2017, Halloun Malek Kharrat's account at Aksys held $1,397.99. On March 23, 2017, he purchased 10 out-of-the-money call options in the GNMCA 21APR17 25.00 C series for $225. He sold them on April 4, 2017 for a profit of $6,955.

29. On March 1, 2017, Al Daher Ahmad Yaacoub's account balance at Aksys was zero. On March 29, 2017, he transferred $1,040 into the account and used the entire balance to purchase 20 out-of-the-money call options in the GNMCA 21APR17 22.50 C series. He sold them on April 4, 2017 for a profit of $17,360.

30. El-Achkar, Kharrat, and Yaacoub did not trade in any GCI securities from October 1, 2016 through April 7, 2017, apart from the transactions detailed above.

31. El-Achkar successfully traded in advance of three other acquisitions between February 2017 to April 4, 2017. In that time period, El-Achkar traded in call

7

options in advance of the acquisitions of three other technology companies, including Mobileye, an Israeli company that announced it was being acquired by Intel on March 13, 2017. El-Achkar made over $494,455 in profit from his Mobileye trades.

32. Kharrat traded in tandem with El-Achkar by purchasing Mobileye call options in advance of its acquisition by Intel. He purchased 10 out-of-the-money call options for $465 on March 2, 2017, and sold them on March 13, 2017, the day of the acquisition announcement, for a profit of $5,719.57.

33. El-Achkar and Yaacoub traded in tandem in call options for Wix.com Ltd. On August 5, 2017, El-Achkar bought 405 out-of-the-money call options for Wix.com Ltd., which he sold at a loss on August 17, 2017. On August 6, 2017, Yaacoub bought 10 out-of-the-money call options for Wix.com, which he sold at a loss on August 18, 2017.

34. Between March 22 and 31, 2017, one or more additional unknown traders purchased 273 out-of-the-money call options, GNCMA 21APR17 22.50 C and GNCMA 19MAY17 22.50 C, for a total of approximately $11,560. They sold the shares on April 4, 2017 for a profit of approximately $163,381. These transactions were settled through an omnibus trading account at Nomura UK.

35. Defendants' GCI trades were suspiciously timed around the GCI acquisition, and represented a large increase in the volume of call options traded. Indeed, the GNMCA 21APR17 25.00 C contracts purchased by El-Achkar and Kharrat constituted 100% of all such GCI call option contracts purchased in March 2017. In addition, Defendants did not hedge their call options purchases, a common strategy employed by options traders.

36. Equity call options, like the ones traded by Defendants, give the buyer the right, but not the obligation, to purchase a company's stock at a set price (the "strike price") for a

certain period of time (through "expiration"). In general, one buys a call option, or call, when one expects the stock price to rise, or sells a call when one expects the stock price to fall. If at the time of purchase the call strike price is above the price at which the stock is then trading, the call is "out of the money" because it would be unprofitable to exercise the call and pay more for the stock than if it were purchased on a stock market.

37. Defendants purchased three option contracts for GCI stock between March 20 and March 31, 2017, shortly before the Announcement.

38. Specifically, Defendants bought GNCMA 21APR17 22.50 C, GNCMA 21APR17 25.00 C and GNCMA 19MAY17 22.50 C. The GNCMA 21APR17 22.50 C option contracts gave the Defendants the right to buy GCI stock at a strike price of $22.50 per share and expired on April 21, 2017; the GNCMA 21APR17 25.00 C option gave them the right to buy GCI stock at $25.00 per share and also expired on April 21, 2017; and the GNCMA 19MAY17 22.50 C option contract gave them the right to buy GCI stock at $22.50 per share and expired on May 19, 2017.

39. The following table shows the dates, amount and cost of each of the call option contracts the Defendants bought shortly before the April 4, 2017 Announcement of the GCI acquisition:

| **Option Series** | **Dates** | **Number** | **Cost** |
|---|---|---|---|
| Unknown Traders in Nomura UK Account | | | |
| GNCMA 21APR17 22.50 C | 3/22/2017<br>3/30/2017<br>3/31/2017 | 50<br>148<br>15 | $3,000<br>$5,235<br>$525 |
| GNCMA 19MAY17 22.50 C | 3/31/2017 | 40 | $2,800 |
| Omar El-Achkar | | | |

9

| **Option Series** | **Dates** | **Number** | **Cost** |
|---|---|---|---|
| GNCMA 21APR17 25.00 C | 3/22/2017 | 500 | $11.375 |
| GNCMA 21APR17 22.50 C | 3/20/2017 | 510 | $26,495 |
| Al Daher Ahmad Yaacoub | | | |
| GNCMA 21APR17 22.50 C | 3/29/2017 | 20 | $1,040 |
| Halloun Malek Kharrat | | | |
| GNCMA 21APR17 25.00 C | 3/23/2017 | 10 | $225 |

40. Defendants' purchase of CGI call options with strike prices of $22.50 and $25.00 was unusual given the historical share price for the common stock and the options data for those calls.

41. All three of the option contracts that the Defendants bought in the March 20 to March 31, 2017 time period were out-of-the-money options. This is because their strike prices were $22.50 and $25.00, but the Defendants bought them when the price of GCI stock was trading at below $22.00. Therefore, the price of GCI stock had to go up in order for the Defendants to make money on these call options by exercising them.

42. El-Achkar and Kharrat purchased 100% of the GNCMA 21APR17 25.00 C options.

43. Defendants purchased 510 out of the total of 511 options in the series GNCMA 19MAY17 22.50 C.

44. Defendants bought 35% of the available GNCMA 21APR17 22.50 C options series.

10

45. Other brokers that purchased GNCMA 21APR17 22.50 C for their customers also sold GCI options concurrent with those purchases. Unlike the rest of the market, the Defendants did not hedge their purchases of GNCMA 21APR17 22.50 C options.

46. The Defendants did not hedge their acquisition of these call options even though they purchased the majority of these options when GCI's common stock was trading at a six-month high of over $20 per share.

47. As a result of the April 4, 2017 Announcement, the price of CGI's common stock shot up from a close of $20.56 on April 3, 2017 to a close of $33.39 on April 4, an increase of over 62.4%. In just one day, the April 4, 2017 Announcement allowed Defendants' initial investment of $50,696 to appreciate to over $1 million.

48. Between October 1, 2016 and March 19, 2017, no other trades in GCI stock or options were made through the omnibus account at Nomura UK.

49. The timing, size, and profitability of the Defendants' trades, as well as the lack of prior history of significant trading in GCI, make these trades highly suspicious. In particular, despite not having traded in GCI securities during at least the prior six months, Defendants invested $50,696 in risky option positions in the two weeks prior to the April 4, 2017 Announcement. Defendants' positions in the GNCMA 21APR17 25.00 C and GNCMA 19MAY17 22.50 C represented virtually 100% of the market for those options. As a result of these well-timed trades, Defendants realized profits of over $1 million in a single day.

50. On information and belief, the Defendants were in possession of material, nonpublic information about the proposed acquisition of GCI at the time they made the call option purchases alleged in this Complaint. Moreover, on information and belief, Defendants used confidential information about the proposed acquisition in breach of a fiduciary duty; were

11

tipped that confidential information by an individual or individuals in breach of a fiduciary duty of trust and confidence; were provided with information that was misappropriated from such an individual in violation of a fiduciary duty to that insider; or misappropriated the confidential information in violation of a fiduciary duty.

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

### (Against All Defendants)

51.     The SEC realleges and incorporates by reference paragraphs 1 through 50, as though fully set forth herein.

52.     Upon information and belief, at the time the Defendants purchased GCI call options, as alleged above, they possessed material, nonpublic information about the contemplated acquisition of GCI.  The Defendants used confidential information about the proposed acquisition in breach of a fiduciary duty; were tipped that confidential information by an individual or individuals in breach of a fiduciary duty of trust and confidence; were provided with information that was misappropriated from such an individual in violation of a fiduciary duty to that insider; or misappropriated the confidential information in violation of a fiduciary duty.  Also, the Defendants (a) knew, recklessly disregarded, or should have known that their trading was in breach of a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, owed to the shareholders of GCI, or to the source from whom they received the material, nonpublic information; and/or (b) knew, recklessly disregarded, or should have known, that the material, nonpublic information about the contemplated acquisition that had been conveyed to them was disclosed or misappropriated in breach of a fiduciary duty, or similar relationship of trust and confidence.

53.     Upon information and belief, any and all material, nonpublic information that the Defendants received concerning the contemplated acquisition of GCI, as set forth above, was disclosed to them by a person or persons who tipped such information with the expectation of receiving a benefit.

54.     By virtue of the foregoing, the Defendants, singly or in concert with others, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; or (b) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

55.     By virtue of the foregoing, the Defendants, directly or indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

## RELIEF SOUGHT

**WHEREFORE**, the SEC respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### II.

Ordering the Defendants to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint.

### III.

Ordering the Defendants to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

### IV.

Granting such other and further relief as this Court may deem just and proper.

Dated:  July 13, 2017

>  */s/ Lynn M. Dean*
>  Lynn M. Dean
>  deanl@sec.gov
>  Amy J. Longo
>  longoa@sec.gov
>  Patricia Pei
>  peip@sec.gov
>  Securities and Exchange Commission
>  Los Angeles Regional Office
>  444 South Flower Street, Suite 900
>  Los Angeles, CA 90071
>  Tel: (323) 965-3998

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

> U.S. SECURITIES AND EXCHANGE COMMISSION,
> 444 S. Flower Street, Suite 900, Los Angeles, California 90071
> Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On July 13, 2017, I caused to be served the document entitled **FIRST AMENDED COMPLAINT** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

> I declare under penalty of perjury that the foregoing is true and correct.

Date:  July 13, 2017                                  */s/ Lynn M. Dean*
                                                                    Lynn M. Dean

**SEC v. OMAR EL-ACHKAR, et al.**
**United States District Court—Southern District of New York**
**Case No. 1:17-cv-02659-KPF**

**SERVICE LIST**

Robert G. Heim, Esq. **(served by CM/ECF only)**
Meyers and Heim LLP
1350 Broadway, Suite 514
New York, NY 10018
Email: RHeim@meyersandheim.com
*Attorney for Omar El-Achkar*


One of More Unknown Traders in the Securities of General Communication, Inc. (via Email) *Defendant(s)*
c/o Nomura Securities International, Inc.
Email: reginquiries@nomura.com

Lori A. Martin, Esq. **(served by CM/ECF only)**
Jeremy T. Adler, Esq. **(served by CM/ECF only)**
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Email:  lori.martin@wilmerhale.com
Email:  jeremy.adler@wilmerhale.com
*Attorneys for Nomura International plc*

Meredith Sherman, Esq. **(served by CM/ECF only)**
Pepper Hamilton LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543-5276
Email:  shermanm@pepperlaw.com
*Attorney for Cedrus Invest Bank S.A.L.*

Jay A. Dubow, Esq. **(served by CM/ECF)**
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
Email:  dubowj@pepperlaw.com
*Attorney for Cedrus Invest Bank S.A.L.*

Jennifer L. Achilles, Esq. **(served by CM/ECF)**
Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Email:  jachiles@reedsmith.com
*Attorney for Aksys Capital SAL*